ASSOCIATION OF AMERICAN PHYSICIANS AND SURGEONS, a non-profit corporation, et al., Plaintiffs,

v.

Jan BREWER, in her official capacity as Secretary of State of the State of Arizona, et al., Defendants,

and

Steven S. Poe and Clean Elections Institute, Inc., Defendants–Intervenors.

No. CIV.04–0200–PHX–EHC.

United States District Court, D. Arizona.

March 10, 2005.

---

Frank J. Conti, Jr., Clint Daniel Bolick, Timothy David Keller, Institute for Justice Arizona Chapter, Phoenix, AZ, for Plaintiffs.

Peter Alex Silverman, Office of the Attorney General, Phoenix, AZ, for Defendants.

## ORDER

CARROLL, District Judge.

Pending before the Court is Defendants–Intervenors' ("Defendants") Motion to Dismiss Plaintiffs' Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim upon which relief can be granted. [Dkt. 11]. Plaintiffs filed a Response. [Dkt. 27]. Defendants filed a Reply. [Dkt. 28].

1. A.R.S. § 16–901 et. seq.

*Background:*

The Plaintiffs in this case are Matt Salmon ("Salmon"), Dean Martin ("Martin"). Lori Daniels ("Daniels"), and the Association of American Physicians and Surgeons ("Association"). [Dkt. 1, p. 2]. Salmon was the Republican candidate for Arizona Governor in the 2002 election and his campaign was privately supported. [Dkt. 1, p. 3] Martin and Daniels are both individuals who plan to run for office in upcoming Arizona elections and who desire to run privately supported campaigns. [Dkt. 1, p. 4]. The Association is a nonprofit organization headquartered in Tucson, Arizona that makes independent campaign expenditures in statewide Arizona elections. as it has done in the past. [Dkt. 1, p. 3].

The Arizona Citizens Clean Elections Act ("CCEA")[1] was enacted in 1998 and creates a government campaign financing system. [Dkt. 1, p. 6]. Plaintiffs challenge certain provisions of the CCEA as unconstitutional violations of free speech and equal protection under the First and Fourteenth Amendments to the United States Constitution. [Dkt. 1, p. 2].

Specifically, Count One of Plaintiffs' Complaint alleges that the CCEA violates the First Amendment by providing matching funds to participating candidates when an independent expenditure is made in support of a nonparticipating candidate opponent. [Dkt. 1, p. 15]. Plaintiffs argue that this process "neutralizes the expender's voice when it makes an independent expenditure" and "creates a chilling effect on the Association's free exercise of protected speech." [Dkt. 1, p. 15].

Count Two alleges First Amendment violations with respect to the CCEA's provision for "equal funding of candidates." [Dkt. 1, p. 16]. Plaintiffs contend the pro-

gram violates the First Amendment by "attempting to equalize the relative financial resources of candidates. and coercing involuntary participation in public campaign financing by punishing those candidates like Plaintiff Matt Salmon, who in 2002 chose not to participate in taxpayer subsidies and instead ran a traditional, privately supported political campaign." [Dkt. 1, p. 16]. Plaintiffs argue that the CCEA punishes nonparticipants by providing matching funds to participants when a nonparticipant opponent makes an independent expenditure. [Dkt. 1, p. 16, 17]. Plaintiffs further argue that the CCEA punishes nonparticipants by requiring them to adhere to more stringent reporting requirements than their participant counterparts.[2] [Dkt 1, p. 18].

Count Three alleges Fourteenth Amendment equal protection violations with respect to the CCEA classifications for independent expenditures. [Dkt. 1, p. 20]. Plaintiffs discuss these independent expenditure classifications as follows:

> (1) those statements brought forward to the voting populace *against* a participating candidate or in favor of the *nonparticipating opponent* of a participating candidate; (2) those statements that *favor* a participating candidate; and (3) those statements that *oppose a nonparticipating candidate.* [Dkt. 1, p. 20].[3]

Plaintiffs argue that each of the three types of expenditures are treated "much differently" under the CCEA. [Dkt. 1, p. 20].[4] Plaintiffs state that political campaign speech is a fundamental right and that this speech has been singled out by the CCEA for disparate treatment. [Dkt. 1, p. 22]. Plaintiffs challenge that such action must withstand strict scrutiny. [Dkt. 1, p. 22].

Count Four alleges Fourteenth Amendment equal protection violations by the CCEA in its provisions providing disparate treatment to those candidates who participate in the program and those who do not. [Dkt. 1, p. 22]. Plaintiffs argue:

> [t]he right of privately supported candidates for public office ... to speak during political campaigns without having involuntary limitations placed on their expenditures, without being coerced into participating in public campaign financing, and without fear of being punished or penalized for having chosen to run as a privately supported candidate is a fundamental right under the First Amendment to the U.S. Constitution. [Dkt. 1, p. 23].

Plaintiffs argue that, "[a]ny regulation ... that singles out nonparticipating candidates for disparate treatment must withstand strict scrutiny." [Dkt. 1, p. 23].

Plaintiffs seek: 1) a declaration that the CCEA provisions at issue in the Complaint violate the First and Fourteenth Amendments of the United States Constitution. 2) a declaration that the Act as a whole is void and of no effect should the remaining provisions be deemed unable to remain legally operational absent the unconstitutional provisions; 3) a preliminary and permanent injunction enjoining Defendants from further administering or enforcing the referenced provisions;[5] 4)

---

**2.** The nonparticipant reports are required to ensure that participants are receiving correct matched funding. Plaintiffs allege that 37 reports are due for nonparticipants between July 1 and November 3, while participants are only required to submit 9 reports total for the duration of their campaigns. [Dkt. 1, p.18].

**3.** *See* A.R.S. § 16–952(C).

**4.** Plaintiffs allege that: the first type of speech is treated as an expenditure of the opponent during the primary election, and a contribution to the opponent during the general election; the second type of speech is matched or neutralized only when the candidate has a participating opponent; and the third type of speech is not matched, regulated, neutralized, or limited. [Dkt. 1, p.21].

**5.** The Court previously denied Plaintiffs' Mo-

nominal damages of $1; 5) reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988; and 6) other relief deemed equitable, just and proper by the Court.

**Standard:**

A court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations. *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002) (citation omitted). All material allegations of the complaint must be accepted as true and in a light most favorable to Plaintiff. *In re Broderbund/Learning Co. Securities Litigation*, 294 F.3d 1201, 1203 (9th Cir. 2002).

**Discussion:**

■ The First Circuit recently addressed a similar complaint involving Maine's Clean Election Act ("MCEA"). *See Daggett v. Comm'n on Governmental Ethics and Election Practices*, 205 F.3d 445 (2000). The *Daggett* Court upheld the challenged provisions of the MCEA.

The MCEA is closely analogous to the CCEA provisions at issue in this case In both Acts, participating candidates must first collect a specific amount of "seed money contributions." These are five-dollar minimum contributions. After candidates have raised the required amounts, they are "certified" and can no longer raise private contributions. Once a candidate is certified, his or her contributions are received exclusively through the MCEA or CCEA Funds.

Candidates who choose to participate in the programs receive dollar-for-dollar matching funds of amounts raised by their non-participating opponents. Matching funds are also provided for "independent expenditures," monies expended by independent entities advocating the non-participant's victory or the participant's defeat.

The two Acts vary slightly. The MCEA provides candidates with an initial disbursement, and then provides matching funds when a non-participant opponent raises more than the amount of that initial disbursement. The MCEA caps the amount that a participating candidate can receive at two times the amount of the initial disbursement. The CCEA imposes spending limits on its participants and provides matching funds when a non-participant opponent spends more than the limit set by the CCEA for that particular office The CCEA caps the amount that a participating candidate can receive at three times the amount of the spending limit.

Both Acts reduce the amount of contributions that an individual or entity can make to a non-participating candidate. Additionally, the two Acts impose certain independent expenditure reporting requirements.

The plaintiffs in *Daggett* challenged the MCEA on the same grounds that Plaintiffs in the present case challenge the CCEA. The *Daggett* Plaintiffs' principal complaint was that. "as a whole [the MCEA] is coercive in its efforts to encourage candidates to become publicly funded and therefore unconstitutionally burdens the First Amendment rights of candidates" *Daggett*, 205 F.3d at 452.

The *Daggett* Court held that the challenged provision of the MCEA affording participating candidates matching funds for their non-participating opponents' independent expenditures was constitutional. The court held:

> [T]he provision of matching funds does not indirectly burden donors' speech and associational rights. Appellants misconstrue the meaning of the First Amendment's protection of their speech. They have no right to speak free from re-

tion for a Preliminary Injunction [Dkt 32].

sponse-the purpose of the First Amendment is to "secure the 'widest possible dissemination of information from diverse and antagonistic sources.'"
*Id.* at 464 (quoting *Buckley v. Valeo*, 424 U.S. 1, 49, 96 S.Ct. 612, 46 L.Ed.2d 659 (1976) *per curiam* ).

The plaintiffs in *Daggett* also challenged the reporting requirement incorporated into the MCEA. This requirement obligates candidates to report independent expenditures of more than fifty-dollars ($50.00) received during any single election. The *Daggett* Plaintiffs argued that the requirement was "overly cumbersome and [would] have a chilling effect on independent speakers in violation of the First Amendment." *Id.* at 465.

Plaintiffs in the present case similarly challenge the disclosure requirements under the CCEA. The CCEA requires that nonparticipating candidates file a series of reports during the election period. The reports provide information needed for the CCEA Fund to distribute matching funds to its participating candidates. The number of reports that a nonparticipating candidate must file is higher than the number required of participating candidates. Plaintiffs argue that this disparity is "impermissibly coercive" and that it "[punishes] the acceptance of private funding." [Dkt. 1, p.18].

■ Disclosure requirement statutes are subject to strict scrutiny, meaning that "there must be a 'relevant correlation' or 'substantial relation' between the governmental interest and the information required to be disclosed.'" *Id.* (quoting *Buckley*, 424 U.S. at 65, 96 S.Ct. 612). The *Daggett* Court held that the MCEA reporting requirement was constitutional because it, "allows voters access to information about who supports a candidate financially and it allows the Commission to effectively administer the matching funds provision of the Act. Further, it deters

corruption and its appearance." *Id.* at 466.

The *Daggett* Court also addressed the plaintiffs' coercion claim. The *Daggett* Plaintiffs argued that the MCEA was "impermissibly coercive" because "it provides so many incentives to participate and so many detriments to foregoing participation that it leaves a candidate with no reasonable alternative but to seek qualification as a publicly funded candidate." *Id.* This is essentially the same argument set forth by Plaintiffs in the case at bar

The *Daggett* Court held that the MCEA was not impermissibly coercive. The court weighed the benefits of candidate participation against the detriments and found them to be roughly proportionate. The court noted that the benefits include, "the release from the rigors of fundraising, the assurance that contributors will not have an opportunity to seek special access, and the avoidance of any appearance of corruption." *Id.* at 471. The court found the detriments to be "the uncertainty of whether and when additional funds will be received based on an opponent's fundraising; the ultimate cap on matching funds; and the foreclosure of the option of pursuing any private campaign funding or spending any monies above those disbursed by the Commission." *Id.* The court pointed out the additional detriment to the candidate of having to obtain seed money contributions, as well as a significant number of $5 qualifying contributions. *Id.*

Plaintiffs urge the Court to adopt the reasoning set forth by the Eighth Circuit in *Day v. Holahan*, 34 F.3d 1356 (1994), *cert denied*, 513 U.S. 1127, 115 S.Ct. 936, 130 L.Ed.2d 881 (1995). The *Day* Court struck down provisions of Minnesota's campaign finance and ethics laws that provided matching funds to participating candidates based on the independent expenditures of non-participating candidates. The

*Day* Court found that the provisions operated in a punitive manner by providing extra funds to a participating candidate when an individual or entity made an independent expenditure against that candidate or in favor of its nonparticipating opponent. The court further held that the statute could not withstand strict scrutiny because the government's interest, though noble, was not compelling. The government's stated interest was "enhancing the public's confidence in the political process by ensuring the viability of the legislature's statutory [program] designed to encourage candidates to accept the voluntary campaign expenditures ... and the accompanying public subsidies." *Day*, 34 F.3d at 1361. The court found that the interest was not compelling because the great majority of political candidates had agreed to spending limits prior to the statute's enactment. The *Day* Court further held that the reporting requirements under the statute were invalid because such requirements could not be severed from the unconstitutional independent expenditure provisions.

The *Daggett* Court rejected the holding in *Day*. *Daggett*, 205 F.3d at 465 ("We cannot adopt the logic of *Day*, which equates responsive speech with an impairment to the initial speaker."). The *Daggett* Court pointed out that a later Eighth Circuit case, *Rosenstiel v. Rodriguez*, 101 F.3d 1544 (8th Cir.1996) *cert denied*, 520 U.S. 1229, 117 S.Ct. 1820, 137 L.Ed.2d 1028 (1997) cast doubt on the *Day* decision. The *Daggett* Court opined that "the continuing vitality of *Day* is open to question." *Daggett*, 205 F.3d at 464, fn. 25.

The court in *Rosenstiel* upheld public financing legislation that involved contribution limits, rather than independent expenditures.[6] The *Rosenstiel* Court noted that its decision in *Day* was premised on the fact that the government's professed interest of encouraging participation was not compelling or even legitimate because nearly 100% of the candidates had already accepted spending limits prior to the statute's enactment. *Rosenstiel*. 101 F.3d at 1555.

The CCEA was added by an Initiative measure ("Proposition 200") approved by the voters, effective November 23, 1998:

The people of Arizona declare our intent to create a clean elections system that will improve the integrity of Arizona state government by diminishing the influence of special-interest money, will encourage citizen participation in the political process, and will promote freedom of speech under the U.S. and Arizona Constitutions. Campaigns will become more issue-oriented and less negative because there will be no need to challenge the source of campaign money.

A.R.S. § 16–940(A).

The CCEA was enacted to create "a 'clean' elections system and [to diminish] the influence of special-interest money." *See* A.R.S. § 16–940(A), Historical and Statutory Notes, with reference to Proposition 200. The statute's provisions were intended to restore the faith of the public in the political process.

The *Daggett* Court held that the government's interest in abolishing the appearance of corruption in the political process was a sufficiently compelling interest for upholding contribution limits in the MCEA. *Daggett*, 205 F.3d at 459.

The Court adopts the reasoning of the First Circuit in *Daggett* and finds that the

---

**6.** Under this program, a taxpayer could receive a $50.00 tax refund ($100.00 refund for couples filing jointly) for any contributions made to candidates participating in Minnesota's public financing system. This system provided public subsidies to candidates who agreed to comply with certain limits on campaign expenditures.

provisions of the CCEA challenged in this action are constitutional.[7]

Accordingly.

**IT IS ORDERED** that Defendants' Motion to Dismiss Plaintiffs' Complaint is **GRANTED.** [Dkt. 11].

**IT IS FURTHER ORDERED** that the Clerk enter judgment in favor of Defendants and against Plaintiffs.

---

**7.** For a thoughtful discussion of the CCEA, *see* M. Colleen Connor, *Raising Arizona Strengthening Express Advocacy Regulation Through* *the Citizens Clean Elections Act,* 34 Ariz.St. L.J. 507 (2002).